UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------X

MICHAEL TRACY WALKER,

               *Petitioner*,

     -against-

LYNN LILLEY[1],
Superintendent of Eastern NY
Correctional Facility,
               *Respondent*.

----------------------------------------X

**<u>MEMORANDUM AND ORDER
ADOPTING R&R</u>**
21-CV-7217 (KAM)(LB)

**KIYO A.  MATSUMOTO, United States District Judge:**

On December 28, 2021, Petitioner Michael Tracy Walker ("Petitioner"), proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (ECF No. 1, Petition for a Writ of Habeas Corpus ("Pet.").)  Petitioner challenges his August 15, 2017, conviction in New York state court of attempted robbery in the second degree.  (*Id.*)  Respondent Lynn Lilley, Superintendent of Eastern NY Correctional Facility, who is represented by the Kings County District Attorney's Office, responded to the Petition on February 17, 2022, (ECF No. 7, State's

---

[1] The proper respondent in a federal habeas action is the warden or superintendent of the facility where the petitioner is held. *See Green v. Lee*, 964 F. Supp. 2d 237, 253 (E.D.N.Y. 2013).  The Court, on its own initiative, deems the Petition amended to correct the misnomer in the caption naming "Lilly J. Lynn" as the Respondent.  *See* ECF No. 1; Department of Corrections and Community Supervision, https://doccs.ny.gov/location/eastern-ny-correctional-facility (last visited Aug. 8, 2024) (indicating Lynn Lilley is the current Superintendent of Eastern NY Correctional Facility).

Affirmation in Opposition ("State Opp.") and State's Memorandum of Law in Opposition ("State Mem.")), and Petitioner responded asking to place additional "documents" into his file on February 22, 2022, and March 11, 2022, (ECF Nos. 9, 10).

Thereafter, the Court referred the Petition to Magistrate Judge Lois Bloom for a Report and Recommendation ("R & R"). Following the issuance and adoption of the first R & R in early 2023, the Court vacated its adoption of the first R & R based on Petitioner's representations that he did not receive the first R & R. (Docket Entry dated April 7, 2023.) The Court again referred the Petition to Judge Bloom, who issued a second comprehensive and detailed R & R, which supersedes the first R & R, in which she recommended that the Petition be denied and no certificate of appealability be issued. (*See* ECF No. 23, Second R & R ("R & R²"), at 13-14.) To facilitate Petitioner's ability to object, and in light of his delays in receiving mail, the Court granted Petitioner an extended period of time in which to object to the R & R. (Docket Order dated April 21, 2023.) Petitioner was served with the R & R and Petitioner submitted his objections on May 16, 2023. (ECF No. 27, Petitioner's Objections ("Obj.").)

For the reasons set forth below, the Court respectfully overrules Petitioner's objections and adopts the conclusions of

---

² Unless otherwise specified, all subsequent references to the "R & R" in this Memorandum and Order refer to Magistrate Judge Bloom's *Second* R & R, filed as ECF No. 23.

the R & R.  The Court assumes the parties' familiarity with the facts underlying the Petition; the history of Petitioner's guilty plea, direct appeal, and collateral proceedings; and the contents of the R & R, to which the Court refers only as necessary to explain this decision.

## **DISCUSSION**

### I.  **Petitioner's Offense, Guilty Plea, and Sentencing**

On January 8, 2017, at approximately 7:37 p.m., Petitioner entered a jewelry store located at 1058 Coney Island Avenue, pulled out a gun, and pointed it at two store employees.  (ECF No. 8, State Court Record[3] ("State Ct. Record"), at 57.)  Petitioner repeatedly assaulted the two employees, and then took jewelry from the store.  (*Id.*)  Petitioner attempted to flee the scene, but was subsequently subdued by one of the employees with the help of bystanders.  (*Id.*)  Police officers arrested Petitioner at the scene of the crime, and surveillance footage captured the incident. (*Id.*)  At the time of his arrest, Petitioner was in possession of a gun and the stolen jewelry.  (State Opp. at ¶ 4.)

Petitioner was subsequently indicted in Kings County and charged with a multitude of offenses, including Robbery in the First, Second, and Third Degree.  (*Id.* at ¶ 5.)  Petitioner

---

[3] The Respondent uploaded the complete record of the underlying state court proceedings as one consolidated document.  The Court's pincites to the state court record refer to the ECF-assigned page number.

ultimately pleaded guilty on August 15, 2017, to one count[4] of Attempted Robbery in the Second Degree[5], in violation of N.Y. Penal Law §§ 110.00 and 160.10(2)(a). (*Id.* at ¶ 6; State Ct. Record at 6.) During Petitioner's guilty plea hearing, he acknowledged that he was pleading guilty to a violent felony, and that he would accordingly be sentenced as a "mandatory persistent" and was therefore subject to a heightened sentence. (State Ct. Record at 12-13.) Petitioner was subsequently sentenced on August 30, 2017, as a persistent violent felony offender, pursuant to N.Y. Penal Law 70.08, to a promised term of 12 years to life in prison. (*Id.* at 22-23, 25.) Petitioner did not indicate at sentencing that he was dissatisfied with his representation by counsel, or that he had been denied any reasonable accommodations as a disabled person. (*Id.*)

Petitioner's sentencing as a persistent violent felony offender was based on his arraignment on a predicate felony statement at sentencing. (*Id.* at 28.) The statement indicated that on November 10, 1994, Petitioner was convicted of the violent felony offense of second degree robbery, and on June 20, 2007, Petitioner was convicted of the violent felony offense of second degree assault. (*Id.*) The sentencing court read aloud the

---

[4] Petitioner also pleaded guilty to burglary in the third degree, in satisfaction of a separate indictment, at the same proceeding. (State Ct. Record at 6.)
[5] Petitioner's allocution as part of his guilty plea to attempted robbery in the second degree included an admission that he "caused injury to [the robbery victim] who [was] not a participant in the crime." (State Ct. Record at 12.)

4

predicate violent felonies, asked Petitioner if he had discussed the matter with his attorney, and then asked Petitioner if he admitted he was the person convicted on those prior violent felonies. (*Id.* at 23.) Petitioner stated he had discussed the matter with counsel, admitted he was the person convicted of the prior felonies, and stated that he did not wish to challenge the constitutionality of his prior convictions. (*Id.*)

## II. Petitioner's Collateral Attacks on the Sentence

### A. Petitioner's CPL § 440.20 Motion

Petitioner initially moved to set aside his sentence pursuant to New York Criminal Procedure Law ("CPL") § 440.20 on January 11, 2018. (State Ct. Record at 180 n.1.) It appears that Petitioner realized his motion was premised on an incorrect basis, as he subsequently conceded that the motion was meritless and moved to set aside his sentence on different grounds on March 29, 2018, again pursuant to CPL § 440.20. (*Id.*) The reviewing court disregarded the earlier motion, and only considered Petitioner's subsequent March 29, 2018, motion. (*Id.*)

In his March 2018 motion, Petitioner argued that his sentence should be set aside on two grounds: (1) that the sentencing court failed to orally pronounce that Petitioner was being sentenced as a violent predicate felony offender; (2) that his attorney at sentencing, and previously in 2007, were ineffective in failing to correct the judge regarding Petitioner's predicate status or

5

otherwise informing the judge that Petitioner should have been sentenced as a non-violent predicate felon.  (*Id.* at 180.)

The reviewing court rejected both of Petitioner's arguments and denied his motion to set aside his sentence on May 30, 2018. (*Id.*)  The reviewing court determined that Petitioner's prior 1994 and 2007 convictions both qualified as predicate violent felony convictions, as defined in N.Y. Penal Law § 70.04(1)(b).  (*Id.* at 182.)  The court rejected Petitioner's contentions that the sentencing court in 2007 only adjudicated him as a "second felony offender," citing to New York case law that notes the *convictions,* and not the sentence, are the basis of the persistent violent felony offender status.  (*Id.* at 183.)  The reviewing court also rejected Petitioner's claims of ineffective assistance of counsel, finding that each counsel provided "meaningful representation" to Petitioner, and that Petitioner did not suffer any actual prejudice.  (*Id.* at 184-85.)

Petitioner subsequently applied for a certificate granting leave to appeal from the order denying his CPL § 440.20 motion, which was denied by a justice of the Appellate Division on September 17, 2018.  *People v. Walker*, 2018 WL 4427295 (N.Y. App. Div. 2d Dep't Sept. 17, 2018).  On November 16, 2018, a judge of the Court of Appeals dismissed as unappealable defendant's further application for leave to appeal from the September 17, 2018, order

of the Appellate Division.  *People v. Walker*, 115 N.E.3d 639 (N.Y. 2018).

**B.    Petitioner's CPL § 440.10 Motion**

After his CPL § 440.20 motion was denied, but before he had exhausted his appeals, Petitioner moved *pro se* to vacate his judgment of conviction pursuant to CPL § 440.10 on June 13, 2018. (State Opp. at ¶ 16; State Ct. Record at 212.)  In the motion, Petitioner argued that (1) the indictment was defective because the prosecution knowingly allowed perjured testimony in the grand jury proceedings; (2) he was denied effective assistance of counsel because his attorney did not introduce the surveillance video of the incident; and (3) the prosecution violated his due process rights and their *Brady* obligations by withholding the surveillance video.  (State Ct. Record at 265.)

The reviewing court denied Petitioner's CPL § 440.10 motion without a hearing on November 30, 2018.  (*Id.*)  First, the court found that the surveillance video "show[ed] Defendant exiting the store with a gun in his hand" and later being apprehended with the gun remaining nearby, belying Petitioner's claim that the video contradicted grand jury testimony.  (*Id.* at 267.)  Second, the court found that, in any event, Petitioner gave up his right to challenge the evidence presented to the grand jury when he pleaded guilty.  (*Id.*)  The court likewise rejected Petitioner's claim of ineffective assistance of counsel, noting certain factual

statements were contradicted by his own admissions, and that Petitioner ultimately benefited from an advantageous plea bargain that limited his sentence of imprisonment. (*Id.* at 268.) Finally, as to the *Brady* claim, the court noted that, contrary to Petitioner's claim of withheld evidence, Petitioner admitted that he watched a copy of the video with his attorney. (*Id.*) Finding that Petitioner had "a full opportunity to litigate all possible good faith claims through post-conviction processes," the court required Petitioner to seek written permission before filing future post-conviction motions. (*Id.*)

Petitioner subsequently applied for a certificate granting leave to appeal from the order denying his CPL § 440.10 motion, which was denied by a justice of the Appellate Division on July 9, 2019. *People v. Walker*, 2019 WL 2997352 (N.Y. App. Div. 2d Dep't July 9, 2019). On September 6, 2019, a judge of the Court of Appeals dismissed as unappealable defendant's further application for leave to appeal from the July 9, 2019, order of the Appellate Division. *People v. Walker*, 134 N.E.3d 635 (N.Y. 2019).

## III.   **Petitioner's First Petition for a Writ of Habeas Corpus**

Following the denial of his CPL § 440.10 motion, Petitioner moved before this Court for a writ of habeas corpus on December 18, 2018. *See Walker v. Keiser*, No. 18-cv-7227 (KAM)(LB). Petitioner raised claims that largely mirrored those in his earlier CPL § 440.20 motion to set aside his sentence, but also argued (1)

8

that the court failed to reasonably accommodate his disability (glaucoma causing legal blindness), and failed to appoint him a defense counsel who was familiar with the Americans with Disabilities Act ("ADA"); and (2) Petitioner was denied his right to access the courts because he was unable to use the law library at his correctional facility. (State Ct. Record at 278-288.) On May 26, 2020, this Court dismissed Petitioner's habeas petition without prejudice as premature based on Petitioner's failure to comply with the exhaustion requirements set forth in 28 U.S.C. § 2254(b)(1)(A). *Walker v. Keiser*, No. 18-CV-7227 (KAM)(LB), 2020 WL 2733987, at *4 (E.D.N.Y. May 26, 2020). The Court noted that because it "decline[d] to reach the merits of Mr. Walker's petition and dismisse[d] it purely on procedural grounds, Mr. Walker's filing of a subsequent petition asserting the same grounds for relief shall not count as a 'second' or 'successive' petition under AEDPA." *Id.* at *5. Petitioner appealed the dismissal, and the Second Circuit declined to grant his motion for a certificate of appealability. *Walker v. Keiser*, No. 20-1784, 2020 WL 7213207, at *1 (2d Cir. Nov. 17, 2020).

## IV. Petitioner's Direct Appeal

Defendant filed his direct appeal of his conviction, *pro se*, on January 7, 2020, raising three claims: (1) he was precluded from access to assistive devices for his disability, rendering his plea involuntary; (2) he was wrongly adjudicated a persistent

violent felony offender; and (3) his counsel was ineffective on several grounds, including during plea negotiations. (State Opp. at ¶ 26.) The Appellate Division affirmed Petitioner's conviction on December 30, 2020. *People v. Walker*, 138 N.Y.S.3d 591, 592 (2d Dep't 2020). The Appellate Division concluded that Petitioner's argument that his plea was involuntary was unpreserved and based on matters outside the record, that Petitioner validly waived his right to appeal, precluding all of his ineffectiveness claims beyond those related to the voluntariness of the plea, and that his claim of ineffectiveness regarding the voluntariness of his plea was not reviewable and should be raised in a motion to vacate the judgment of conviction. *Id.* at 592-93. The Appellate Division also found that Petitioner's challenge to his sentence was unpreserved, that he was properly adjudicated a persistent violent felony offender, and that Petitioner's remaining claims were based on matters outside the record and therefore not properly before the appellate court. *Id.* at 593. Petitioner's application for further leave to appeal was denied by the New York Court of Appeals on July 8, 2021. *People v. Walker*, 172 N.E.3d 800 (N.Y. 2021).

## V.  The Instant Petition

Petitioner filed the instant petition on December 28, 2021, raising three grounds for habeas relief. (*See generally* Pet.) First, Petitioner claims that his sentence as a predicate violent felony offender was unauthorized and the result of ineffective

10

assistance of counsel. (*Id.* at 5.) Second, Petitioner claims that his attorney was ineffective for instructing him not to controvert his prior conviction of assault in the second degree as unauthorized for sentencing purposes. (*Id.* at 6.) Third, Petitioner claims that his attorney was not trained under the A.D.A. and the Rehabilitation Act, and therefore failed to afford him reasonable accommodations. (*Id.* at 8.)

As discussed further *supra*, Respondent appeared and filed an answer to the Petition, and the matter was referred to Judge Bloom for an R & R. Although the First R & R was adopted in full, the Court later vacated the order adopting the First R & R after being informed by Petitioner that he had not received the First R & R. (Docket Order dated April 7, 2023.) Judge Bloom subsequently issued a Second R & R on April 10, 2023, ("R & R"), and Petitioner filed his objections on May 16, 2023, (Obj.).

## LEGAL STANDARD

### I.  Review of a Report and Recommendation

"When a magistrate judge has issued an R & R and a party makes specific and timely written objections, a district court is to review *de novo* those portions of the report to which objection is made." *Witherspoon v. Colvin*, No. 18-CV-4816 (DC), 2023 WL 2134873, at *2 (E.D.N.Y. Feb. 21, 2023) (internal quotation marks and citation omitted); *see also* 28 U.S.C. § 636(b)(1). "The objections of parties appearing *pro se* are 'generally accorded

11

leniency' and should be construed 'to raise the strongest arguments that they suggest.'" *Reyes v. LaValley*, No. 10-CV-2524 (KAM) (LB), 2013 WL 4852313, at *1 (E.D.N.Y. Sept. 10, 2013) (quoting *Milano v. Astrue*, No. 05-CV-6527 (KMW) (DCF), 2008 WL 4410131, at *2 (S.D.N.Y. Sept. 26, 2008), *aff'd*, 382 F. App'x 4 (2d Cir. 2010)). But "where objections are 'merely perfunctory responses,' argued in an attempt to 'engage the district court in a rehashing of the same arguments set forth in the original petition,'" the standard of review is clear error. *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (quoting *Vega v. Artuz*, No. 97-CV-3775 (LTS) (JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)). Upon review of the R & R, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## II. Federal Review of State Convictions

In reviewing a petition for habeas corpus relief, a federal court may only consider whether a person is in custody pursuant to a state court judgment in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires a federal court reviewing a state prisoner's habeas petition to give deference to a state court's decision on the merits. *Id.* § 2254(d). A federal court may not

issue a writ of habeas corpus unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.; see also Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee,* 857 F.3d 466, 477 (2d Cir. 2017). "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'" *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103).

"This deferential standard is higher still for habeas petitions alleging the ineffective assistance of counsel." *Witherspoon*, 2023 WL 2134873, at *2. In general, to prevail on a claim of ineffective assistance, a petitioner must (1) show that counsel's performance was so deficient as to fall below "an objective standard of reasonableness"; and (2) establish prejudice by demonstrating a "reasonable possibility" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). In the context of a habeas petition pursuant to 28 U.S.C. § 2254, however, "[e]stablishing that a state court's application of *Strickland* was unreasonable . . . is all the more difficult. The standards created by *Strickland* and § 2254(d) are

13

both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks and citations omitted).   Therefore, "[t]he operative question" when a federal court reviews "a state court's *Strickland* ruling is thus not whether [the] federal court believes the state court's determination was incorrect, but rather whether that determination was objectively unreasonable." *Waiters*, 857 F.3d at 478 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)) (internal quotation marks omitted).

Beyond the aforementioned deferential standard of review, "federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Cone v. Bell*, 556 U.S. 449, 465 (2009) (internal quotation marks and citation omitted).  As a result, federal courts may not review a state court ruling that "fairly appear[s] to rest primarily on state procedural law," so long as the procedural bar is "adequate to support the judgment." *Murden v. Artuz*, 497 F.3d 178, 191-92 (2d Cir. 2007) (citations omitted).  "Federal courts in this Circuit have repeatedly held that the gatekeeping provisions of New York law governing a petitioner's failure to raise a claim on direct appeal 'represent[] the application of a firmly established and regularly followed New

York rule.'"  *Witherspoon*, 2023 WL 2134873, at *2 (quoting *Williams v. Goord*, 277 F. Supp. 2d 309, 318-19 (S.D.N.Y. 2003)).

## DISCUSSION

The instant Petition presents three grounds for relief: (1) that his sentence as a persistent violent felony offender was unauthorized; (2) that his counsel was ineffective in that she instructed him not to controvert his prior conviction of Assault in the Second Degree, which he claims was unauthorized for predicate sentencing purposes; and (3) that his counsel was not trained under the Americans with Disabilities Act or the Rehabilitation Act and failed to afford him reasonable accommodations for his visual impairment.  (Pet. at 5-6, 8.)  In the R & R, Judge Bloom recommended that Petitioner's first and third claims were not cognizable on habeas review, and that his ineffective assistance of counsel claim failed on the merits. (R & R at 7-13.)

## I.  Petitioner's Persistent Violent Felony Offender Sentencing Claim

Regarding Petitioner's claim of an unauthorized sentence as a persistent violent felony offender, Judge Bloom determined that "[t]he question of whether a habeas petitioner was unlawfully adjudicated a persistent felony offender and improperly subjected to recidivist sentencing under New York State law is not cognizable on habeas review."  (R & R at 7 (citing *Saracina v. Artus*, 452 F.

App'x 44, 46 (2d Cir. 2011).)   Therefore, Judge Bloom declined to
review the claim given "it is not the province of a federal habeas
court to reexamine state-court determinations on state-law
questions." (*Id.* at 8 (quoting *Estelle v. McGuire*, 502 U.S. 62,
67-68 (1991).)

Petitioner objects to Judge Bloom's findings, arguing that
Judge Bloom "circumvented" and failed to consider the exhibits he
submitted related to his prior sentencings by not making reference
to them or discussing them in the R & R.   (Obj. at 8-13.)
Petitioner also objects to Judge Bloom's characterization of his
claim, arguing that it was not solely based on the defective nature
of his "rap sheet." (*Id.* at 14-16.)   Petitioner further objects
to the fact that Judge Bloom did not refer to his CPL § 440.20
motion in summarizing the procedural history of his case, but
rather to a summary of it included in the order denying his motion.
(*Id.* at 15-20.)   Finally, Petitioner objects to Judge Bloom's
reliance on *Saracina*, 452 F. App'x at 46.   (*Id.* at 21.)

As noted above, "where objections are 'merely perfunctory
responses,' argued in an attempt to 'engage the district court in
a rehashing of the same arguments set forth in the original
petition,'" the standard of review of a Report & Recommendation is
clear error.   *Ortiz*, 558 F. Supp. 2d at 451.   Petitioner does not
offer any additional factual information or legal authority that
was not before Judge Bloom when she originally entered the R & R,

and the Court need only review the R & R for clear error, as a result.  The Court finds no clear error in Judge Bloom's findings, but even if the Court were to review this claim *de novo*, the Court would conclude that Petitioner's claim does not provide a basis for habeas relief.

Under New York law, "[w]hen the court has found . . . that a person is a persistent violent felony offender," defined as "a person who stands convicted of a violent felony offense . . . after having previously been subjected to two or more predicate violent felony convictions," the court "*must* impose an indeterminate sentence of imprisonment, the maximum term of which will be life imprisonment."   N.Y. Penal L. § 70.08(2) (emphasis added). Multiple courts in this district have found, as Judge Bloom did, that any error in applying the persistent violent felony offender statute at sentencing is a matter of state law, and therefore not cognizable on habeas review.  *See e.g., Saracina*, 452 F. App'x at 46 (finding that the question of whether the state court "erred in applying a New York recidivist sentencing enhancement statute," such as N.Y. Penal Law § 70.08, "is a question of state law" and is not cognizable on habeas review); *May v. Griffin*, No. 17-CV-6319 (KMK)(JCM), 2021 WL 5450731, at *23 (S.D.N.Y. Mar. 15, 2021), *report and recommendation adopted*, 2021 WL 5450346 (S.D.N.Y. Nov. 19, 2021) (finding claim that prior conviction was improperly considered as a predicate offense under the persistent violent

felony offender statute not cognizable on habeas review); *Albritton v. Comm'r, New York State Dep't of Corr. Servs.*, No. 11-CV-3482 (RRM), 2013 WL 4500736, at *7 (E.D.N.Y. Aug. 20, 2013) (claim that prior conviction was improperly used as a predicate for a "second felony adjudication" is "purely a matter of state law"); *Boutte v. Poole*, No. 07-CV-8412 (GEL), 2008 WL 3166696, at *1 (S.D.N.Y. Aug. 4, 2008) (finding that Petitioner's claim that he was improperly sentenced as a persistent violent felony offender because his prior conviction "was not . . . for a violent felony" is "exclusively a question of state law" and "may not be a basis for federal habeas relief.").

Furthermore, Petitioner's objection to the application of *Saracina* in the R & R is based on an erroneous reading of the opinion. *Saracina* dealt with a very similar situation as encountered here – a petitioner who claimed he was unlawfully adjudicated as a persistent felony offender. 452 F. App'x at 45. The Second Circuit found that "[w]hether a New York court erred in applying a New York recidivist sentencing enhancement statute is a question of New York State law" and therefore not the province of a federal habeas court to review. *Id.* at 46. The Second Circuit's reference to a *Canadian* conviction was in a supporting parenthetical for *United States ex rel. Dennis v. Murphy*, 265 F.2d 57, 58 (2d Cir. 1959) (per curiam), which the Second Circuit cited

in support.   Therefore, Petitioner's objection to the use of *Saracina* is misplaced.

Finally, even if this Court were able to review the merits of Petitioner's claim, the Court would conclude they are without merit.   As the reviewing court explained in great detail in its order rejecting Petitioner's CPL § 440.20 motion, Petitioner was properly sentenced as a persistent violent felony offender. (State Ct. Record at 182.)   At the time of his sentencing in 2017, Petitioner had been convicted of three violent felonies.   See N.Y. Penal Law § 70.02(1)(b)-(c) (defining attempted and completed second-degree robbery as violent felonies, along with assault in the second degree).   Petitioner's 1994 conviction for robbery in the second degree and 2007 conviction for assault in the second degree were predicate violent felony "convictions," and the court-imposed sentences for them on November 10, 1994, and June 20, 2007, respectively. (*Id.* at 181.)   Accordingly, Petitioner was convicted of two violent felonies[6] before, but fewer than ten years before, Petitioner committed the instant felony on January 8, 2017, excluding jail time.   *See* N.Y. Penal Law § 70.04(b).   In light of these two prior violent felony "convictions," the court properly adjudicated petitioner a persistent violent felony offender on August 30, 2017. N.Y. Penal Law § 70.08(1)(a).

---

[6] "'Conviction' means the entry of a plea of guilty to, or a verdict of guilty upon, an accusatory instrument other than a felony complaint, or to one or more counts of such instrument."   CPL § 1.20(13)

Petitioner's contention that in 2007, the court sentenced him as a second felony offender, rather than as a second violent felony offender, has no impact on whether Petitioner could be sentenced as a persistent violent felony offender.  As other courts have recognized, "it is wholly irrelevant that in [a prior sentencing], the sentencing court referred to [Petitioner] as a 'prior predicate felon'" rather than as a violent felony offender.  *Burgess v. Yelich*, No. 09-CV-5514 (RRM), 2013 WL 6816602, at *10 (E.D.N.Y. Dec. 24, 2013).  Instead, what matters for the persistent violent felony offender analysis is Petitioner's *conviction*, rather than his sentence for those convictions.  *Id.* (citing N.Y. Penal Law §§ 70.04(b), 70.08(1)(a)); *see also People v. Carr*, 664 N.Y.S.2d 766, 767 (1st Dep't 1997) (Although defendant "escaped being sentenced as a second violent felony offender for his second violent felony conviction in 1989, neither [New York precedent] nor Penal Law § 70.08 require that a defendant be adjudicated a second violent felony offender in order to be sentenced as a persistent violent felony offender for his third violent felony conviction.") Therefore, even if the Court could review Petitioner's claim regarding an unauthorized sentence, the Court finds no error in the state court's determination that Petitioner was a violent felony offender, and therefore it would not be a basis for habeas relief.

In light of the above, the Court respectfully overrules Petitioner's objection and adopts Judge Bloom's recommendation that Petitioner's persistent violent felony offender claim be denied as not cognizable on habeas review.

## II.  Ineffective Assistance of Counsel

Judge Bloom next considered Petitioner's claim that he was denied the effective assistance of counsel due to his court-appointed attorney instructing him "not to controvert [his] prior conviction of assault in the second degree" as unauthorized.  (Pet. at 6.)  Judge Bloom found that Petitioner's ineffective assistance claim failed "both prongs of the *Strickland* test."  (R & R at 9.) First, Judge Bloom found that because Petitioner's underlying sentencing claim (regarding his adjudication as a persistent violent felony offender) lacked merit, it could not give rise to a claim of ineffective assistance of counsel.  (*Id.* at 10.) Second, Judge Bloom found that even if Petitioner's counsel had erred, Petitioner does not "demonstrate a reasonable probability that he would not have pleaded guilty but rather would have insisted on going to trial but for counsel's alleged errors." (*Id.* at 11.)

The Court is not able to discern any specific objections by Petitioner to Judge Bloom's findings on his second claim, beyond his objection to Judge Bloom citing an argument from his direct appeal that he argues is not renewed in his present Petition.

(Obj. at 22.)   In the absence of specific objections, the Court reviews Judge Bloom's findings for clear error, and finding none, adopts them in full.

As Judge Bloom explained in the R & R, the crux of Petitioner's ineffective assistance of counsel claim is that he should not have been sentenced as a persistent violent felony offender in 2017, because at his June 20, 2007, sentencing, the sentencing court stated that it "adjudicate[d] [Petitioner] a second felony offender," as opposed to a second *violent* felony offender.   (Pet. at 6, State Ct. Record at 326.)   As discussed *supra*, the wording used at Petitioner's 2007 sentencing is irrelevant to whether he was *convicted* of a violent felony. Indeed, at Petitioner's June 5, 2007, plea hearing, the state court engaged in the following colloquy:

> THE COURT: Mr. Walker, do you wish to plead guilty to the class D as in David violent felony offense of assault in the second degree, the fifth count of this indictment, to cover and satisfy the entire indictment against you?
>
> [PETITIONER]: Yes, your Honor.

(State Ct. Record at 320.)   Based on Petitioner's guilty plea, he was convicted of the violent felony offense of assault in the second degree, and it properly served as a predicate violent felony offense for his sentencing in 2017.

Because Petitioner's claim that he was improperly sentenced as persistent violent felony offender is meritless, his counsel's

failure to make that argument (or encourage Petitioner to do so) does not constitute ineffective assistance of counsel. *See Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) ("The failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which Petitioner was entitled.") (internal quotation marks and citation omitted).

Because Petitioner has not shown his counsel committed any cognizable errors at sentencing or otherwise, the Court respectfully overrules his objections and adopts Judge Bloom's well-reasoned recommendations in their entirety.

### III. Petitioner's Americans with Disabilities Act Claim

Judge Bloom closed the R & R by considering Petitioner's final claim that his counsel was "not trained under the ADA" or Section 504 of the Rehabilitation Act, and therefore failed to provide him with "reasonable accommodations." (Pet. at 8.) Judge Bloom found that Petitioner's ADA claim was not cognizable on habeas review, and that, even interpreted as an ineffective assistance of counsel claim, Petitioner failed to demonstrate that his counsel's performance fell below an objective standard of reasonableness. (R & R at 12-13.)

Petitioner objects, raising the same arguments that he made in previous filings that his counsel's review of video surveillance footage with him was insufficient because his counsel did not bring an "advocate" under the ADA or assistive devices to the meeting.

23

(Obj. at 25.)   Petitioner also cites grievances he filed with prison authorities claiming that he was not provided with assistive devices in the law library.   (*Id.*)   Petitioner argues that his "counsel bec[ame] his set of eyes" as a result, and made errors that he was not able to detect, including the previously mentioned issue with the 2007 conviction.   (*Id.* at 26-27.)

To the extent Petitioner's claim is solely premised on a violation of the ADA or Section 504 of the Rehabilitation Act, the Court concurs with Judge Bloom that such a claim, on its own, is not cognizable on habeas review, which is to be used only for challenges to either the fact or duration of a prisoner's confinement.   *See Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973) ("a [§] 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody").   This Court must liberally construe Petitioner's arguments in light of his *pro se* status, and thus, the Court will also consider, as Judge Bloom did, whether his counsel's alleged failure to accommodate his disability constituted ineffective assistance of counsel.   (*See* R & R at 13.)

The Court notes that the Second Circuit has held "that the Sixth Amendment right to participate in one's own trial encompasses the right to reasonable accommodations for impairments to that participation, including hearing impairments."   *United States v.*

*Crandall*, 748 F.3d 476, 481 (2d Cir. 2014).  Similarly, just as a court on notice of a defendant's impairments has a duty to provide a reasonable accommodation, "so too does an attorney aware of his client's hearing impairment have a duty to seek reasonable accommodation for it."  *Pierotti v. Harris*, 350 F. Supp. 3d 187, 196 (E.D.N.Y. 2018).   Notwithstanding the aforementioned precedent, there are notable distinctions between the present case and *Pierotti* that indicate Petitioner was not denied the right to effective assistance of counsel.

In *Pierotti,* the petitioner was "only able to hear and understand a speaker speaking directly to him while facing him" and he wore two hearing aids, but was without the hearing aids at the time of trial.  *Id.* at 190.  Pierotti's counsel was on notice of his client's hearing difficulties and requested accommodations from the court, which were denied.  *Id.*  Pierotti subsequently had difficulty during the trial understanding the proceedings, and notified his newly-appointed counsel multiple times that he could not hear what was being stated.  *Id.* at 191.  Despite this, Pierotti's counsel took no further steps to accommodate his client's difficulty hearing or following the proceedings.  *Id.* at 196.  On this record, the *Pierotti* court found that Pierotti "was essentially rendered absent for significant portions of his trial" and therefore his trial was rendered fundamentally unfair.  *Id.* at 197.

Petitioner's case is easily distinguishable from *Pierotti*. Petitioner states in his filings that he is "legally blind" and "can not read documents without the use of devices." (State Ct. Record at 38.) Though the Court does not minimize Petitioner's disability in any way, it does not appear from the record that his sight impairment impacted his ability to engage with his counsel in the instant case or determine whether to enter a guilty plea. As noted by the Respondent, Petitioner's counsel was capable of reading to Petitioner any document he wished to understand, and the Petitioner never informed the court at his plea hearing or at sentencing that Petitioner was unable to understand the indictment or any other documents in his case. In fact, the record shows that at Petitioner's plea hearing, he agreed with the court that he had "had enough time to discuss" the case, his plea, and his sentence with his attorney, and that Petitioner stated he understood the rights he was giving up by pleading guilty. (*Id.* at 6-9.) When it came time for Petitioner to agree to an appellate waiver, his counsel requested to have the opportunity to read the waiver aloud for her client to hear. (*Id.* at 9-10.) Petitioner subsequently agreed that he understood the appellate waiver and had had a chance to discuss the waiver with his attorney. (*Id.* at 10-11.)

Petitioner argues that his counsel failed to accommodate his disability by, among other things, visiting him to discuss the

surveillance footage without assistive devices beyond a standard laptop. (Obj. at 25.) The Court finds no evidence that Petitioner's counsel was ineffective in failing to secure such assistive devices. Petitioner does not contend that he was actually unable to view the surveillance footage on a laptop, or that his counsel failed to describe what the video conveyed and answer any questions that Petitioner might have about the video. Similarly, there is no evidence that Petitioner's counsel failed to convey information to Petitioner about his previous felony convictions contained in written documents by discussing the documents with him orally. Based on the facts of this case, the Court does not conclude that Petitioner's counsel's performance fell below an objective standard of reasonableness, as numerous other courts in the circuit have concluded in similar circumstances. *See, e.g., Maynard v. Brown*, No. 07-CV-10480 (FM) (WHP), 2009 WL 960075, at *10 (S.D.N.Y. Mar. 11, 2009), *report and recommendation adopted,* 2009 WL 1344688 (S.D.N.Y. May 13, 2009) (finding no ineffective assistance of counsel claim where petitioner "established that no [American Sign Language] interpreter was present during his out-of-court consultations with [his lawyer], [but he failed to] demonstrate[] that the quality of their discussions was adversely impacted"); *Yik Man Mui v. United States*, No. 99-CV-3627 (SJ) (RER), 2013 WL 6330661, at *20 (E.D.N.Y. Dec. 5, 2013) (rejecting ineffective assistance of

27

counsel claim based on "blanket assertions about language barriers without pointing to any specific instances where [petitioner] was unable to understand" his counsel or proceedings); *Sanders v. United States*, 130 F. Supp. 2d 447, 449 (S.D.N.Y. 2001) (petitioner's argument that the failure to provide him with written translations of documents in his case violated his rights without merit when petitioner "was provided the services of a certified interpreter at every court appearance and in meetings with his lawyers prior to his plea and sentencing").

Because Petitioner has not shown his counsel was deficient in failing to take further steps to accommodate his disability, the Court finds no basis for relief based on ineffective assistance of counsel, respectfully overrules Petitioner's objections, and adopts Judge Bloom's well-reasoned recommendations in their entirety.

## IV.  Remaining Objection

Separate and apart from Petitioner's objections to Judge Bloom's findings on his claims, Petitioner also objects to the R & R's characterization of the Petitioner's underlying offense. (Obj. at 28.)  Petitioner argues that he "did not strike any female in the head with a firearm." (*Id.*)  Petitioner's objection to the R & R's characterization of his offense has no bearing on Judge Bloom's findings, which did not rely on the challenged fact. Accordingly, the Court overrules Petitioner's remaining objection,

finding that it is irrelevant to Judge Bloom's analysis of whether his claims supported habeas relief.

<u>**CONCLUSION**</u>

For the reasons set forth above, Petitioner's objections are overruled, and Magistrate Judge Bloom's well-reasoned and thorough Report and Recommendation is adopted in its entirety as the opinion of the court. Accordingly, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied and dismissed in its entirety. Because Petitioner has not made a substantial showing of the denial of any constitutional right, a certificate of appealability will not issue and is denied. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (discussing certificate of appealability standard); Rules Governing Section 2254 and 2255 Cases, Rule 11 ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").

The Clerk of Court is respectfully requested to amend the caption to reflect that Lynn Lilley (the Superintendent of Eastern NY Correctional Facility) is the Respondent, enter judgment in favor of Respondent, and close this case. In accordance with 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this order would not be taken in good faith and thus denies in forma pauperis status for the purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of Court is

respectfully requested to serve a copy of this Order and the Judgment on Petitioner and note such service on the docket by August 14, 2024.


**SO ORDERED.**

Dated:      August 12, 2024
            Brooklyn, New York

_____
**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York